IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**TONIA SANCHEZ,**

       Plaintiff,

vs.                                                     Civ. No. 05-535 ACT

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

       Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court upon Plaintiff's Motion to Reverse or Remand the Administrative Agency Decision filed October 12, 2005. Docket No. 11. The Commissioner of Social Security issued a final decision denying benefits finding that Plaintiff was not disabled. Having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, the Court finds that the motion is well taken.

**I. PROCEDURAL RECORD**

Plaintiff, Tonia Sanchez, applied for Supplemental Security Income Benefits on March 24, 2003. Plaintiff alleged she became disabled on January 1, 1999, due to hepatitis C, depression and fatigue. Tr. 40, 51. The application was denied at the initial and reconsideration level. The ALJ conducted a hearing on June 8, 2004. Tr. 235. At the hearing, Plaintiff was represented by counsel. On November 18, 2004, the ALJ issued his decision and found that pursuant to the "grids" Plaintiff was not disabled. Tr. 18. Thereafter, the Plaintiff filed a request for review. On April 27, 2005 the

1

Appeals Council issued its decision denying Plaintiff's request for review and upholding the final decision of the ALJ. Tr. 4. The Plaintiff subsequently filed her Complaint for court review of the ALJ's decision on May 13, 2005.

Plaintiff was born on August 21, 1957. Tr. 40. She has a GED and has no past relevant work experience.

## II. STANDARD OF REVIEW

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied correct legal standards. *See Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Glenn v. Shalala*, 21 F.3d 983 (10th Cir. 1994). Evidence is substantial is "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Secretary of Health and Human Svcs.*, 985 F.2d 1045, 1047 (10th Cir. 1993) (quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983) (citation omitted)). A decision of an ALJ is not supported by substantial evidence if other evidence in the record overwhelms the evidence supporting the decision. *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

In order to qualify for disability insurance benefits, a clamant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity. *See* 42 U.S.C. §423(d)(1)(A); *see also Thompson*, 987 F.2d at 1486. The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520(a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *See Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id.*

### III. MEDICAL HISTORY

Progress notes from the Ben Archer Health Center show that Plaintiff was treated for depression with Zoloft and Effexor[1] from October of 2001 to March of 2004. Tr. 204-07.

Plaintiff underwent a physical exam by Armando Lopez de Victoria, M.D., a gastroenterologist, on January 22, 2002. Dr. Lopez diagnosed the Plaintiff with hepatitis C and "clin. depression." Tr. 91. He further noted that she was taking Zoloft but was having side effects including sleepiness. *Id.* The record shows that the Plaintiff had a liver biopsy on February 26, 2002 which confirmed Dr. Lopez' diagnosis of hepatitis C, with "mild to moderate activity." Tr. 84.

On May 28, 2003 Plaintiff was evaluated by Hershel A. Danemann, M.D. for a gastroenterology consult. Tr. 132-34. It was noted in her history that she suffered from depression three years ago after her son was murdered. At that time she was prescribed Zoloft. Prior to any treatment for her hepatitis C Dr. Danemann referred her to "Psychiatry" to be evaluated "for the

---

[1] Zoloft and Effexor are indicated for treatment of major depressive disorder. *Physician's Desk Reference ("PDR")*, 59th ed., 2005, 2682, 3321.

appropriateness of treatment considering her current status and past history of depression" as well has a "full set of labs." Tr. 133.

On October 2, 2003, Plaintiff was evaluated at The Counseling Center and diagnosed with adjustment disorder with mixed anxiety. Tr. 154-58. The notes indicate that this assessment was in preparation for long term medical treatment with Interferon.[2]

A letter from Sanjeev Arora, M.D., dated April 5, 2004, states that Plaintiff is receiving treatment for hepatitis C and that the "side effects of treatment can include flu-like symptoms, fatigue, loss of appetite, nausea, vomiting, dry itchy skin and depression."

There is also a letter in the record dated June 11, 2004 from Christopher Waggoner, a Certified Nurse Practitioner, that Plaintiff had been treated for depression since October 2001. Her current medication at that time was Effexor XR 150 mg daily. He further stated that previously Plaintiff had been prescribed Zoloft 100 mg daily. Tr. 200.

## IV. DISCUSSION

Plaintiff alleges that the ALJ's application of the "grids" and his credibility finding are not supported by the substantial evidence and are contrary to law.

"**Grids**."

The Medical-Vocational Guidelines ("grids") are used at step five to determine whether a disability exists. 20 C.F.R. Part 404, subpt. P, App. 2. The "grids" reflect the existence of jobs in the national economy at various residual functional capacity levels by incorporating administrative notice of occupational publications and studies. 20 C.F.R. §§404.1566(d); 416.966(d). This aids the

---

[2]Interferon is indicated for the treatment of chronic hepatitis C and may cause or aggravate fatal or life threatening neuropsychiatric disorders. *PDR*, *supra* at 2218-19.

Commissioner in determining what specific job types in the national economy the claimant can perform. The "grids" assume that the claimant's sole limitation is lack of strength; i.e. an exertional impairment. 20 C.F.R. Part 404., Subpt. P, App. 2, §200(e)(2).

In this matter, the ALJ applied "grid" 202.20 that directs a finding of not disabled. Tr. 17. Plaintiff asserts that the ALJ erred in applying the "grids" because depression is a nonexertional limitation. The Court agrees, depression is a nonexertional limitation. 28 C.F.R. §§ 404.1569a(c)(1)(i)-(iii), 416.969a(c)(1)(i)-(iii) (stating that nonexertional limitations include difficulty in functioning due to anxiety or depression). ""[R]esort to the grids is particularly inappropriate when evaluating nonexertional limitations such as ...mental impairments." *Hargis v. Sullivan*, 945 F.2d 1482, 1590 (10th Cir. 1991). The "grids" may only be applied if the nonexertional impairments do not significantly reduce the underlying job base. *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995). The ALJ found at step two that Plaintiff's depression was severe. A finding at step two that an impairment is severe means that the impairment significantly limits [her] ability to do basic work activities; i.e., the abilities and aptitudes necessary to do most jobs. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1998); 20 C.F.R. §§ 404.1521(b), 416.921(b). This finding appears to be inconsistent with the ALJ's application of the "grids" at step five. The failure of the ALJ to explain this inconsistency requires a remand. *Timmons v. Barnhart*, 118 Fed. Appx. 349 (10th Cir. 2004) ("At the very least, the ALJ should have explained how a "severe" impairment at step two became "insignificant" at step five."); *Lopez v. Barnhart*, 78 Fed. Appx. 675, 679 (10th Cir. 2003) ("...the grids may be used to direct a conclusion if the claimant's nonexertional impairments do not significantly reduce the underlying job base"..."[t]he ALJ, however, must back such a finding of negligible effect with the evidence to substantiate it.").

**Credibility finding**.

Plaintiff asserts that the ALJ erred in analyzing Plaintiff's complaints of pain and that the ALJ's findings concerning Plaintiff's credibility are not supported by the substantial evidence. In evaluating a claimant's complaints of pain, the ALJ must consider three factors: (1) whether there is objective medical evidence of a pain-producing impairment; (2) whether there is a loose nexus between this objective evidence and the pain; and (3) whether, in light of all the evidence, both objective and subjective, the pain is disabling. *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987). The ALJ did not perform this analysis. Moreover, the ALJ appeared to use factors he should not have considered. The ALJ refers to "the claimant's manner while testifying at the hearing." Tr. 16. Commonly referred to as the "sit and squirm" test, this test may not be used if the evidence in the record is uncontroverted that Plaintiff pain in is genuine. *Teter v. Hecker*, 775 F.2d 1104 (10th Cir. 1985) The ALJ also mentioned Plaintiff's "interest, bias or prejudice." Plaintiff's financial interest in the outcome or Plaintiff's receipt of state benefits are not a proper basis to question Plaintiff's motivation in seeking benefits. *Caldwell v. Sullivan*, 736 F. Supp. 1976, 1081 (D. Kan. 1990). On remand, the ALJ should perform a proper pain and credibility analysis.

Finally, the record contains evidence that Plaintiff did receive general assistance from the State of New Mexico. Tr. 240; NMSA § 27-2-7. However, the ALJ did not mention that evidence. The Tenth Circuit has held that "[a]lthough findings by other agencies are not binding on the [Commissioner], they are entitled to weight and must be considered." *Baca v. Dept. of Health & Human Servs.*, 5 F.3d 476, 480 (10th Cir. 1993). Recently, the Tenth Circuit assumed, without deciding, that the holding in *Baca* applies to findings by state agencies. *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). On remand, the Commissioner should consider this evidence.

6

Due to the ALJ's error at step five, this matter must be remanded for further proceedings. In addition the Court advises the Secretary that on remand, all of Plaintiff's limitations supported by the substantial evidence must be considered at step five, a proper pain and credibility analysis must be performed and the ALJ must consider that Plaintiff is receiving general assistance from the State of New Mexico.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse or Remand Administrative Decision is granted for proceedings consistent with this memorandum opinion and order.

_____
**ALAN C. TORGERSON**
**UNITED STATES MAGISTRATE JUDGE**